# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 5998 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| INNOVATIVE DENTAL GROUP, LLC II, ) | |
| AJAYPAL SINGH, and DIMPLE TEJANI ) | |
| ) | |
| Defendants. ) | |

## ORDER

The Court grants in part PNC Bank National Association's petition for attorneys' fees [38]. The Court awards PNC Bank National Association $26,264.00 in attorneys' fees. See Statement for further details.

## STATEMENT

PNC Bank National Association ("PNC") brings this petition for attorneys' fees in the amount of $39,685.00. In June 2016, PNC filed a complaint against Innovative Dental Group, LLC, II ("IDG"), Ajaypal Singh, and Dimple Tejani (Defendants) alleging breaches of a promissory note and two commercial guaranties. PNC also filed a petition and affidavit of attorneys' fees and costs in October 2016. On March 13, 2017, this Court granted PNC's motion for summary judgment on its claims and ordered IDG, Tejani, and Singh to pay PNC the full amount outstanding on the promissory note, $462,716.12, plus daily interest. The Court also granted in part and denied in part PNC's request for attorneys' fees and litigation costs and ordered IDG, Tejani, and Singh to pay PNC $4,444.77 for PNC's litigation costs. The Court denied without prejudice PNC's motion for attorneys' fees, finding that PNC's request did not provide adequate documentation of the fees it requested. PNC filed a second petition [38], which is now before the Court.

In August 2010, PNC loaned IDG $875,000 pursuant to a promissory note (the "Note"). As security for the Note, IDG executed a commercial security agreement in favor of PNC granting PNC a security interest in its accounts receivable, deposit accounts, inventory, equipment, and other personal property. Singh and Tejani each executed a commercial guaranty in favor of PNC (the "Guaranties"), guaranteeing payment of the Note and agreeing to pay all expenses incurred in enforcing the guaranties, including attorneys' fees and costs. In August 2013, Defendants entered into a modification of the Note and the Guaranties (the "First Modification"), after defaulting on the Note in May 2013. In October 2015, Defendants entered into another modification of the Note and the Guaranties (the "Second Modification"), after

defaulting on the Note in July 2015. Defendants again defaulted after failing to make a December 2015 payment.

I.   Scope of Work

Defendants argue that PNC is only entitled to recover attorneys' fees resulting from the event that gave rise to this particular lawsuit, which they argue is the default in January 2016.[1] Defendants note that more than 60% of PNC's requested fees relate to "prior litigation or negotiations between the parties." Doc. 41 at 3. However, PNC argues that it is entitled to recover attorneys' fees incurred prior to January 2016 because those fees were associated with the enforcement of the Note and Guaranties, which started on April 26, 2013 when counsel began working to negotiate and draft the First Modification.

Under Illinois law, "the general rule is that each party bears the burden of its own attorney's fees, but parties to a contract may alter this rule." *River E. Plaza v. Variable Annuity Life Ins. Co.*, No. 03 C 4354, 2008 WL 623617, at *3 (N.D. Ill. Mar. 4, 2008) (citing *Powers v. Rockford Stop-n-Go, Inc.*, 761 N.E.2d 237, 240, 326 Ill. App. 3d 511, 260 Ill. Dec. 393 (2001)). Contractual fee-shifting provisions are strictly construed. *Id.* (citing *Powers*, 761 N.E.2d at 240). Illinois law requires a court to give "clear and unambiguous contract terms their plain meaning." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 735 (7th Cir. 2010).

The Note and the Guaranties at issue each provide that PNC may recover attorneys' fees resulting from its efforts to collect on the Note and enforce the Guaranties, regardless of whether a lawsuit is filed as part of those efforts. The Note provides that:

> [PNC] may hire or pay someone else to help collect this Note if [IDG] does not pay. [IDG] will pay [PNC] that amount. This includes, subject to any limits under applicable law, [PNC]'s attorneys' fees and [PNC]'s legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgement collection services.

Doc. 31 at 19. The Guaranties each state that Singh and Tejani:

> agree[] to pay upon demand all of [PNC]'s costs and expenses, including [PNC]'s attorneys' fees and [PNC]'s legal expenses, incurred in connection with the enforcement of [the Guaranties]. Lender may hire or pay someone else to help enforce this Guaranty, and the Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include [PNC]'s attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings

---

[1] Defendants argue that in its Opinion and Order granting PNC summary judgment, the Court outlined the scope of work for which PNC is entitled to recover fees. However, this misreads the Court's Opinion and Order. The Court noted in its Opinion and Order the tasks involved in litigating this particular case, but it deferred ruling on PNC's request for attorneys' fees and did not make a finding as to the scope of work for which PNC is entitled to seek fees. *See* Doc. 36 at 5–6.

2

(including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.

Doc. 31 at 23–24, 28–29. The Guaranties also provide that Singh and Tejani are liable for attorneys' fees and legal expenses owed by IDG to PNC.

The parties modified the Note and the Guaranties by the First Modification and the Second Modification, but each of those agreements provides for the continuing validity of the attorneys' fees provisions. Moreover, each modification explicitly provides for the payment of PNC's attorneys' fees and costs in connection with the modifications.[2] The Second Modification further states that past due and current attorneys' fees are owed to PNC and were estimated at that time to total approximately $18,000. The Second Modification required monthly payments toward the reimbursement of those attorneys' fees and costs.

The attorneys' fees provisions in the Note, the Guaranties, the First Modification, and the Second Modification are clear and unambiguous. Courts interpreting similar provisions have reached the same conclusion. *See Bank of Am., N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F. Supp. 3d 1092, 1100–01 (N.D. Ill. 2014) (finding that loan provision stating "all fees and out-of-pocket expenses (including attorneys' fees and legal expenses) incurred by [lender] in connection with the . . . collection, enforcement, . . . or amendment of this Loan Agreement" was not ambiguous); *McHenry Sav. Bank v. Autoworks of Wauconda, Inc.*, 924 N.E.2d 1197, 1205–06, 399 Ill. App. 3d 104, 338 Ill. Dec. 671 (2010) (reviewing similar attorneys' fees provisions in a note and guaranties and finding that the language was unambiguous and entitled plaintiff to recover for its efforts to collect under the note). Under the terms of the loan documents, Defendants are required to pay the attorneys' fees incurred by PNC in its efforts to collect under the Note and enforce the Guaranties, including the fees resulting from the First Modification and the Second Modification. *See Comerica Bank v. Nali, Inc.*, No. 14-CV-4884, 2015 WL 5920787, at *2–4 (N.D. Ill. Oct. 8, 2015) (holding that defendant was responsible "for all attorney's fees and costs incurred in enforcing the Note and other loan documents" where the Note specifically stated that the amounts due under the Note include "expenses to collect amounts due under th[e] Note, enforce the terms of the[e] Note or any other loan document"); *PNC Bank, NA v. OHCMC-Oswego, LLC*, No. 11 C 301, 2012 WL 2062889, at *3 (N.D. Ill. June 4, 2012) (finding that loan modifications, which included provisions providing for attorneys' fees resulting from modifications, entitled lender to collect from borrower expenses from negotiations of the modifications).

It is clear from the billing documentation submitted by PNC that on April 26, 2013, its attorneys began working to collect the amounts owed under the Note and to enforce the Guaranties. By May 3, 2013, Defendants were in default for failure to make payments due under the Note. According to the billing documentation submitted by PNC, from April 26, 2013 to September 9, 2013, its attorneys completed 70.2 hours of work reviewing various loan documents, drafting demand letters and a complaint, preparing and executing a modification of

---

[2] The First Modification states that IDG agreed to "pay all of [PNC]'s reasonable attorneys fees and costs in connection with" the First Modification. Doc. 31 at 34. Similarly, the Second Modification states that IDG agreed to pay "all of [PNC]'s reasonable attorneys fees and costs in connection with" the Second Modification. Doc. 31 at 55.

the loan documents, conducting due diligence related to the modification, and engaging in extensive communication and correspondence with PNC and with IDG's counsel regarding the terms of the loan modification. In January, November, and December 2014, PNC's counsel completed 4.8 hours of work preparing additional notices of default to IDG. Subsequently, in 2015, PNC's attorneys again engaged in 78.1 hours of work to enforce the terms of its loan documents. From June 2015 to December 2015, PNC's attorneys engaged in extensive communication and correspondence with PNC and IDG's counsel to negotiate and prepare another loan modification, drafted and filed a complaint against Defendants, finalized and executed the modification, and entered into a stipulation to dismiss the filed complaint. The Court finds that the work done by PNC's counsel prior to January 2016 falls within the scope of the clear and unambiguous provisions of the Note, the Guaranties, and the modifications.

Defendants argue that because the Second Modification includes a provision requiring payment of attorneys' fees, which at that time were estimated to be $18,000, that amount owed is no longer considered fees resulting from the enforcement of the Note and Guaranties and is instead a part of the Note and Guaranties that should have been claimed as part of PNC's judgment against Defendants. However, PNC did request its attorneys' fees, including those which were identified in the Second Modification, in its motion for summary judgment against Defendants. The Court specifically excluded from its Opinion and Order granting summary judgment against Defendants any attorneys' fees owed to PNC and deferred ruling on those amounts until PNC provided the Court with further documentation regarding the reasonableness of the fees. Defendants' argument that PNC cannot collect the attorneys' fees identified in the Second Modification is unavailing.

## II. Reasonableness

Defendants also argue that the fees sought by PNC for work related to this lawsuit are "utterly unreasonable" and "excessive." Doc. 41 at 4. A federal court sitting in diversity applies state law to determine the reasonableness of an attorneys' fees award. *See Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1048 (7th Cir. 2016) (applying state law to determine whether the district court's award in diversity case was reasonable); *PNC Bank, NA*, 2012 WL 2062889 at *4 (applying Illinois law to determine reasonableness of attorneys' fees). Under Illinois law, if a contract calls for the award of attorneys' fees, the Court should award all reasonable fees. *Rexam Beverage Can Co.*, 620 F.3d at 738 (citing *J.B. Esker & Sons, Inc. v. Cle–Pa's P'ship*, 757 N.E.2d 1271, 1277, 325 Ill. App. 3d 276, 259 Ill. Dec. 136 (2001)). A trial court may consider the following factors when making its reasonableness assessment: "the nature of the case, the novelty and difficulty of the case, the skill and standing of the attorneys, the degree of responsibility required, the usual and customary charges in the community for similar work, and the connection between the case and the fees charged." *McHenry Sav. Bank*, 924 N.E.2d at 1206.

PNC's request includes a total of 224.4 hours of attorney work and 17.1 hours of paralegal work. In its Opinion and Order granting PNC summary judgment, the Court noted that this case was exceedingly straightforward and questioned the necessity of more than 200 hours of legal work to litigate this case. However, as discussed above, a significant amount of the attorney and paralegal work took place prior to this lawsuit, as part of PNC's efforts to collect

under the Note, enforce the Guaranties, and execute the loan modifications. Only 71.5 hours of attorney work and 5.8 hours of paralegal work took place after January 2016, when Defendants defaulted on the Second Modification, which subsequently led to the filing of this lawsuit. From January 2016 to March 2017, PNC's counsel worked to respond to the 2016 defaults and to file and litigate this lawsuit. This work included drafting default notices, a complaint, an initial status report, motions for default judgment, and a motion for summary judgment. PNC's counsel also attended status hearings and reviewed various settlement proposals from Defendants. In addition, PNC's counsel monitored and made appearances in foreclosure cases filed against Singh and Tejani. The Court finds that, given the nature of this case, the 71.5 hours of attorney work and 5.8 hours of paralegal work is reasonable for the tasks necessary to respond to the 2016 defaults and litigate this case against Defendants.

Defendants argue that there is "no reasonable explanation" for PNC's counsel expending seven hours of work "for review of pleadings and orders, telephone conferences and appearances in court on a case for which it is not a party." Doc. 41 at 4–5. However, these cases were foreclosure and other lawsuits against Singh and Tejani, the outcomes of which would clearly impact PNC's ability to enforce the Guaranties. According to the billing documentation provided by PNC, there were several such lawsuits. The Court finds that it was reasonable for PNC's counsel to expend the amount of time that it did related to those cases.

Defendants also argue that some time entries reflect "time spent on administrative tasks, such as prepping documents and ambiguous 'interoffice work.'" Doc. 41 at 4–5. PNC asserts that its fees are reasonable and the work was necessary to collect on the Note, enforce the Guaranties, and litigate this case. Defendants cite to federal law holding that clerical work such as sending pleadings or reviewing appearances and summons, even if completed by a paralegal, should not be part of a fee award. The Court finds this and other federal case law regarding the unavailability of attorneys' fees for clerical tasks relevant to applying "the degree of responsibility required" factor in determining reasonableness under Illinois law. *See Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2–3 (N.D. Ill. Oct. 31, 2006); *United Cent. Bank v. Kanan Fashions, Inc.*, 10 CV 331, 2012 WL 1409245, at *3–4 (N.D. Ill. Apr. 23, 2012). Because clerical work does not require a significant amount of responsibility, the Court will strike from PNC's fee petition the 1.3 attorney hours and 3.2 paralegal hours spent on tasks that are clerical in nature.[3] This results in a reduction of $509 from PNC's fee petition.

Defendants request that the Court strike from PNC's request the fees for any time spent preparing its fee petition. However, the case law cited in support of its argument acknowledges that two hours is an acceptable amount of time to spend on a fee petition in a straightforward case. *Scott v. Sunrise Healthcare Corp.*, No. 95 C 1277, 1999 WL 787624, at *5 (N.D. Ill. Sept. 23, 1999). PNC's billing documentation shows that its counsel spent 1.7 hours in March 2017 preparing its fee petition and affidavit. The Court will therefore permit PNC to recover its attorneys' fees related to the preparation of this fee petition.

---

[3] This includes a total of 2.5 hours for electronic filing of documents on June 8, 2016, July 5 and 14, 2016, August 29, 2016, September 28 and 29, 2016; 0.2 hours for sending copies of motions to the service list on August 29, 2016; 0.5 hours for preparing letter and courtesy copies for the Court and sending copies to the service list on August 30, 2016; and 1.3 hours for compilation of exhibits on October 26, 2016.

5

While the Court finds that PNC's request for attorneys' fees for work done after January 2016 is reasonable (with the exception of the 4.5 hours spent on clerical tasks), it does not reach the same conclusion with regard to the work done prior to January 2016. Although the pre-2016 work was completed as part of PNC's efforts to collect on the Note, enforce the Guaranties and execute the loan modifications, it was excessive given the nature of the work. PNC's counsel spent 70.2 hours over the course of six months to respond to and resolve Defendants' 2013 default by entering into the First Modification. In 2015, its counsel spent 78.1 hours to respond to and resolve Defendants' second default by entering into another modification of the loan agreements. Each of the loan modifications was relatively simple and straightforward, and did not involve complex legal issues. PNC's counsel spent approximately the same amount of time to litigate and successfully resolve this lawsuit against Defendants as it did to enter into each loan modification. Consequently, the Court will strike 50% of the attorney hours included in PNC's fee petition relating to the work done in 2013 prior to the First Modification (35.1 attorney hours) and 50% of the attorney hours relating to the work done in 2015 prior to the Second Modification (39 attorney hours). *See Northern Tr. Co. v. Brown*, No. 91 C 3136, 1992 WL 220950, at *1 (N.D. Ill. Aug. 31, 1992) (holding that attorneys' fees provision in guaranty allowed plaintiff to collect the fees associated with collecting on the indebtedness but reducing award after finding the plaintiff's request in some instances were excessive for relatively simple matters). The Court also strikes 3.5 paralegal hours spent on clerical tasks in 2015.[4] This results in a total reduction of $12,912 from PNC's fee petition for work completed prior to January 2016. Taking all the reductions into account, the Court awards PNC $26,264.00 in attorneys' fees.

Date: May 30, 2017                                              /s/ Sara L. Ellis_____

---

[4] This includes a total of 2.9 hours for electronic filing and saving of documents on October 1, 2015 and November 3, 2015; and 0.6 hours for forwarding summons to various individuals on October 2, 2015.